UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICOLE DUBOSE <br> 5012 Rorer Street <br> Philadelphia, PA 19120 <br><br> Plaintiff, <br><br> v. <br><br> MORRISON HEALTHCARE <br> 51 N. 39th Street <br> Philadelphia, PA 19104 <br><br> Defendant | JURY DEMANDED <br><br> No. |

## CIVIL ACTION COMPLAINT

**I. Parties and Reasons for Jurisdiction.**

1. Plaintiff, Nicole Dubose, is an adult individual residing at the above address.

2. Defendant, Morrison Healthcare is a corporation organized and existing under the laws of Pennsylvania, with a principle place of business at the above address.

3. At all times material hereto, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

4. Ms. Dubose exhausted her administrative remedies pursuant to the Equal Employment Opportunity. (See Exhibit "A," a true and correct copy of a dismissal and notice of rights issued by the Equal Employment Opportunity Commission.)

5. This action is instituted pursuant to the Americans with Disabilities Act ("ADA"), the Family Medical Leave Act ("FMLA"), Title VII and Section 1981 of the Civil Right Act and applicable federal and state laws.

6. Jurisdiction is conferred by 28 U.S.C. §§ 1331 and 1343.

7.  Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant conducts business in this district, and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district. Ms. Dubose was working for Defendant in the Eastern District of Pennsylvania at the time of the illegal actions by Defendant as set forth herein.

**II. Operative Facts.**

8.  On or around September 8, 2018, Morrison Healthcare hired Ms. Nicole Dubose as a fulltime Patient Services Manager.

9.  Ms. Dubose is an African American female and is therefore in a protected class.

10. Initially, Ms. Dubose worked for Defendant at their University of Pennsylvania location under director Jennifer Campbell

11. In or around November of 2018, Ms. Dubose was involved in a car accident that caused her a back injury. As a result, she suffered pain in the sciatica nerve, disk issues, degeneration, and pain for which she needed to attend therapy and take medication.

12. As a result of the car accident, Ms. Dubose applied for and was granted intermittent FMLA leave which extended through her termination date, for her back pain and anxiety.

13. On or around September of 2019, Ms. Dubose requested to be transferred to Defendant's Penn Presbyterian location.

14. Defendant denied Ms. Dubose's transfer request and unlike her Caucasian co-workers who were allowed to directly transfer, Ms. Dubose had to reapply and start over from probation, like a new hire.

15. Although Defendant treated Ms. Dubose like a new hire, she received less than one week out of the mandatory four-week training when she was transferred to their Penn Presbyterian location.

16. Despite Defendant not providing Ms. Dubose correct training, she was given a write up two times in the month of November 2019 for making errors that would have been addressed in training.

17. Ms. Dubose was given the write up as a result of negligence which was actually due to her lack of training.

18. Ms. Dubose complained to the Human Resource Department that the two write ups that she received were unjust because they were due to negligence of work from other managers, she did not receive the proper training, there was no proper investigation or proof that she was at fault.

19. On or around December 2019, two weeks after Ms. Dubose called Human Resources ("HR"), she received another write up and again complained to the HR.

20. This write up was again unfounded and was due to Defendant's understaffing conditions that existed during the time in question, as well as because of Defendant's failure to provide Ms. Dubose with the proper training.

21. Shortly after Ms. Dubose received these write-ups, she reported her concerns concerning the write ups, namely unfair treatment and retaliation to HR.

22. Soon after Ms. Dubose reported her concerns on the write ups to HR, Ms. Dubose was put on a 30-day Performance Improvement Plan ("PIP") by Mr. Wenger.

23. Pursuant to the PIP, if Ms. Dubose did not carry out the duties that were listed for her to do, then it could lead up to disciplinary action or termination

24.     After being placed on the PIP, Ms. Dubose again complained to HR that she felt targeted by Mr. Wenger since she began her employment and she was feeling very stressed.

25.     In or around January of 2020, while she was on approved FMLA leave. Mr. Wenger reported to Defendant's Leave of Absence ("LOA") administrator that when Ms. Dubose was hired, she had a second job and based on Defendant's contract, Ms. Dubose could not have a second job when taking LOA.

26.     As a result, Ms. Dubose did not receive any payments for the two months that she was on leave.

27.     On or around June of 2021, Ms. Dubose presented a doctor's note to Mr. Wenger for her FMLA approved ongoing back pain which contained the work restrictions that Ms. Dubose needed to avoid prolonged standing and that she needed to take breaks in-between standing.

28.     Mr. Wenger said that he could not accept the doctor's note and would not accommodate her.

29.     Ms. Dubose advised her doctor that Mr. Wenger would not accept her note and that Mr. Wenger was requiring a more specific note on her limitations.

30.     Ms. Dubose's doctor prepared a more specific note that Ms. Dubose was limited to no prolonged standing and needed to sit every 30 minutes for 15 minutes.

31.     On or around June 4, 2021, Ms. Dubose provided this updated note to Mr. Wenger and he didn't say anything or offer to accommodate her in any way.

32.     Ms. Dubose complained to Mr. Wenger and to Mr. Lorenzetti that they were not accommodating her because they were not following her spine doctor's recommendations.

33. Defendant did not engage in the interactive process with Ms. Dubose to discuss accommodations.

34. Due to the type of physical requirements of Ms. Dubose's job, and lack of Defendant's investigation into her accommodations, she was not allowed to rest as she should.

35. In or around July of 2021, Ms. Dubose spoke to and complained to her Assistant Director Kevin Lorenzetti, about her director Joshua Wenger who would make discriminatory comments about African American and Muslim workers.

36. Mr. Wenger's comments included, "you know how these people are, they don't have direct deposit," when speaking about African American employees.

37. Ms. Wenger would also make derogatory and hostile comments on Muslim employees' hair, their head dresses and their clothing.

38. Ms. Dubose complained about Mr. Wenger and told Mr. Lorenzetti, that she couldn't believe Mr. Wenger was speaking like this about her co-workers and that it bothered her.

39. Mr. Wenger's comments would offend any reasonable person and did in fact offend Ms. Dubose and made her uncomfortable at work.

40. Ms. Wenger's comments also made Ms. Dubose feel that her workplace was hostile and intimidating and negatively affected her morale and caused her distress.

41. Defendant did not take any action against Mr. Wenger in response to Ms. Dubose's complaint.

42. On or around April 1, 2022, Ms. Dubose sent an email advising that she was resigning on May 1, 2022 to both Mr. Wenger and the assistant director Mr. Kevin Lorenzetti as a joke.

5

43. Mr. Lorenzetti called Ms. Dubose right away to ask her if she was serious about resigning, to which Ms. Dubose replied, "April Fools". Mr. Lorenzetti was relieved that Ms. Dubose was not resigning.

44. However, Mr. Wegner did not take Ms. Dubose's joke lightly and accepted Ms. Dubose's resignation, even though her intention was to remain employed with the company,

45. That the same day, Ms. Dubose came to speak directly with Mr. Wenger to tell him that she was not resigning, but he brushed her off and did not want to discuss it.

46. Ms. Dubose also texted Mr. Wenger later that evening with an apology of her actions, and he did not respond to her text until April 4, 2022.

47. On April 4, 2022, Ms. Dubose called HR and explained to them that she did not intend to resign when she sent the email and she advised HR that the email she sent was a joke.

48. In response, HR suggested that Ms. Dubose have a meeting with Mr. Wegner concerning the matter. Ms. Dubose did just that and apologized again for her actions.

49. Ms. Dubose again apologized to Mr. Wenger, however, he did not care how apologetic Ms. Dubose was. He did want to hear what she had to say, his decision was his decision.

50. Ms. Dubose then spoke to the Regional HR Manager Mr. Scott Anthony and explained the situation. After that Mr. Anthony had a meeting with Mr. Wenger and another Regional HR representative Melissa Broder.

51. During that meeting Mr. Wenger stated that it was his final decision to not rescind Ms. Dubose's resignation.

52. However, a few days later, Mr. Lorenzetti warned Ms. Dubose that they were going to let her go because Mr. Wenger did not trust that she would come to work as scheduled and that he assumed that she would call off using her approved FMLA time.

53. Ms. Dubose then had a meeting with both Mr. Wenger and Mr. Lorenzetti to ensure that they were aware of her intentions. During the meeting Ms. Dubose told them that she was not going to abuse the approved FMLA time that she was granted, but she fully planned to fulfill her job duties, and to be in good standing with Defendant.

54. On April 29, 2022, Ms. Dubose was terminated by Defendant.

55. As a direct and proximate result of Defendant's conduct, Plaintiff sustained great economic loss, future lost earning capacity, lost opportunity, loss of future wages and earnings, as well as emotional distress, humiliation, pain and suffering, personal injury damages and other damages as set forth below.

**III. Causes of Action.**

**COUNT I**
**VIOLATION OF FMLA—INTERFERENCE**
**(29 U.S.C. §2601 et seq.)**

56. Ms. Dubose incorporate the preceding paragraphs as if fully set forth at length herein.

57. As set forth above, Plaintiff was entitled to medical leave pursuant to the FMLA, 29 U.S.C. §2601, et seq.

58. As described above, Defendants interfered with, restrained and denied Plaintiff's exercise and/or attempts to exercise her rights under the Family and Medical Leave Act.

59. As a proximate result of Defendants' conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost

opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of her earning power and capacity and a claim is made therefore.

60. As a result of the conduct of Defendants' owners/management, Plaintiff hereby demands punitive and/or liquidated damages.

61. Pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. §2601, et seq Plaintiff demands attorney's fees and court costs.

## COUNT II
## VIOLATION OF FMLA
## RETALIATION
## (29 U.S.C. §2601 et seq.)

62. Ms. Dubose incorporate the preceding paragraphs as if fully set forth at length herein.

63. As set forth above, Plaintiff was entitled to and qualified for medical leave pursuant to the FMLA, 29 U.S.C. §2601, et seq.

64. Defendant's motivation in terminating Plaintiff's employment was based, in part, upon her taking permissible FMLA leave.

65. As a proximate result of Defendant's conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of her earning power and capacity and a claim is made therefore.

66. As a result of the conduct of Defendant's owners/management, Plaintiff hereby demands punitive and/or liquidated damages.

67. Pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. §2601, et seq Plaintiff demands attorneys' fees and court costs.

## COUNT III
## TITLE I CLAIM--AMERICANS WITH DISABILITIES ACT DISCRIMINATION
## (42 U.S.C.A. § 12101 et seq)

68. Plaintiff incorporates the preceding paragraphs as if fully set forth at length herein.

69. At all times material hereto, and pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq, an employer may not discriminate against an employee based on a disability.

70. Plaintiff is a qualified employee and person within the definition of Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq.

71. Plaintiff's back injury substantially limits Plaintiff's major life activities including: caring for herself, sleeping, walking, standing, lifting, bending and working.

72. At all times material hereto, Plaintiff was qualified to perform her essential job functions with or without a reasonable accommodation.

73. Defendant's conduct in terminating Plaintiff is an adverse action, was taken as a result of her disability and constitutes a violation of the Americans with Disabilities Act of 1990.

74. Defendant is an "employer" and thereby subject to the strictures of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq.

75. At all times material hereto, Plaintiff had a qualified disability, as described above.

76. Defendant's conduct in terminating Plaintiff is an adverse action, was taken as a result of her disability and constitutes a violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq.

77. Defendant failed to engage in an interactive discussion of Plaintiff disability and failed to reasonably accommodate her disability.

78. As a proximate result of Defendant's conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of her earning power and capacity and a claim is made therefore.

79. As a result of the conduct of Defendants' owners/management, Plaintiff hereby demands punitive damages.

80. Pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq Plaintiff demands attorneys' fees and court costs.

## COUNT IV
## TITLE I CLAIM--AMERICANS WITH DISABILITIES ACT RETALIATION
## (42 U.S.C.A. § 12101 et seq)

81. Plaintiff incorporates the preceding paragraphs as if fully set forth at length herein.

82. At all times material hereto, and pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq, an employer may not retaliate against an employee based her exercising her rights under the Americans with Disabilities Act.

83. Plaintiff is a qualified employee and person within the definition of Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq,

84. Defendant is an "employer" and thereby subject to the strictures of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq,

85. As set forth above, Plaintiff engaged in protected activity when she requested an accommodation for her qualified disability and when she took approved medical leave for her disability.

86. As set forth above, Defendant was aware of Plaintiff's qualified disability.

87. Defendant taking an adverse employment action against Plaintiff was temporal in proximity to their becoming aware of her disability and her need for leave.

88. As set forth above, Defendant's conduct in terminating Plaintiff is an adverse employment action, was taken as a result of Plaintiff engaging in protected activity and constitutes a violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq,

89. As a proximate result of Defendant's conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of her earning power and capacity and a claim is made therefore.

90.     As a result of the conduct of Defendants' owners/management, Plaintiff hereby demands punitive damages.

91.     Pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq Plaintiff demands attorneys' fees and court costs.

## COUNT V
## VIOLATION OF SECTION 1981 OF THE CIVIL RIGHTS ACT

92.     Plaintiff incorporates the preceding paragraphs as if fully set forth at length herein.

93.     Section 1981 of the Civil Rights Act prohibits discrimination on the basis of race in the making of contracts, including employment contracts.

94.     The Defendant's conduct in terminating Plaintiff's employment was based on her race.

95.     The Defendant's conduct in terminating Plaintiff's employment would have been different "but for" Plaintiff's race. Pursuant to the Section 1981 of the Civil Rights Act, Plaintiff demands attorney's fees and court costs.

**WHEREFORE,** Plaintiff, Nicole Dubose, demands judgment in her favor and against Defendant, Morrison Healthcare, in an amount in excess of $150,000.00 together with:

A. Compensatory damages, including but not limited to: back pay, front pay, past lost wages, future lost wages. Lost pay increases, lost pay incentives, lost opportunity, lost benefits, lost future earning capacity, injury to reputation, mental and emotional distress, pain and suffering

B. Punitive damages;

C. Attorneys' fees and costs of suit;

D. Interest, delay damages; and,

E. Any other further relief this Court deems just proper and equitable.

                              **LAW OFFICES OF ERIC A. SHORE, P.C.**

BY: _/s/Mary LeMieux-Fillery, Esq.
       **MARY LEMIEUX-FILLERY, ESQUIRE** (PA I.D. 312785)
       Two Penn Center
       1500 JFK Boulevard, Suite 1240
       Philadelphia, PA 19102
       Ph: 267-546-0132
       Fx: 215-944-6124
       *Attorney for Plaintiff, Nicole Dubose*

Date: 11/15/2022

13

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.S. § 4904, relating to unsworn falsification to authorities.

_____                                    Electronically Signed — 2022-11-15 02:16:54 UTC - 172.56.216.2
(Date Signed)                                                                         Nintex AssureSign® — 0b726197-fea7-42c3-add9-af4d0158ed20
                                                                                      Nicole Dubose